No. 38,428

THE SALINA COCA-COLA BOTTLING CORP., *Appellee* and *Cross-appellant*, v. ALPHA D. ROGERS, otherwise known as ALPHA ROGERS, *Appellant* and *Cross-appellee*.

(237 P. 2d 218)

Opinion filed November 10, 1951.

*Ralph H. Noah* and *Thomas H. Conroy,* both of Beloit, argued the cause and were on the briefs for the appellant and cross-appellee.

*R. L. Hamilton,* of Beloit, argued the cause and was on the briefs for appellee and cross-appellant.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a tenant against the landlord for reimbursement of rents paid in advance over the full period of a term lease in accordance with the provisions of the lease contract, the building having been destroyed by fire before the expiration of the term. The defendant's answer pleaded as a defense that the fire was occasioned by plaintiff's, the tenant's, negligence. The defendant also filed a cross petition in which she sought recovery for the value of the building.

Plaintiff's reply contained a demurrer to defendant's answer based on the grounds (1) the answer failed to constitute a defense; and (2) several causes of action were improperly joined. The reply also contained a demurrer to the cross petition on the grounds (1) it failed to state a cause of action and (2) it constituted a misjoinder of causes of action.

The trial court sustained the second ground of the demurrer. From that ruling the defendant appealed. The plaintiff cross-ap-

pealed from the order overruling its first ground of the demurrer to the answer and to the cross petition.

Plaintiff contends the answer does not constitute a defense and its demurrer thereto should have been sustained. We shall consider that question first. In order to avoid confusion we shall continue to refer to the parties as plaintiff and defendant.

There is no occasion to set forth all the allegations of the amended petition. The lease, attached to the petition, made no provision for taking out insurance by either party and contained no reference to the rental status of the parties in the event the building was destroyed by fire. Under its terms the taxes and improvements on the property were required to be paid by the landlord. The lease also provided:

"And the said party of the second part does hereby hire the said premises for the term above mentioned and *do* hereby covenant and promise to keep the said premises in good repair and every part thereof, and will not release or assign this lease without the written consent of the said party of the first part, and at the expiration of the said term, *yield and deliver up the same, in like condition as when taken, reasonable wear and use thereof and damage by the elements excepted.* And the said party of the first part does covenant that the said party of the second part, on paying the moneys as aforesaid, and performing all the covenants aforesaid, shall and may peacefully and quietly have, hold and enjoy the said described premises for the term aforesaid." (Our italics.)

The term of the lease was from January 1, 1950, to December 31, 1952. The building was alleged to have been totally destroyed by fire arising by accident on January 25, 1950. The petition alleged plaintiff was advised by defendant that defendant was willing for plaintiff to restore the building at its own expense but without credit to it for the rent previously paid in advance. Plaintiff asked judgment in the sum of $388.89 for the unused portion of the lease together with interest from February 1, 1950.

The material allegations of defendant's answer, in substance, were:

The fire was not a mere accident but was caused by plaintiff's negligent acts. The answer detailed the alleged acts of negligence. We need not comment on those allegations except to say plaintiff's demurrer to the answer, of course, admitted the negligence pleaded and that it caused the fire.

We are presently wholly unconcerned with the problem of defendant's proof of plaintiff's alleged negligence. For the purpose

of reviewing the ruling on the dèmurrer to the answer we start with plaintiff's admission that the building was destroyed as a result of its own negligence.

Plaintiff contends negligence of a tenant resulting in the complete destruction of leased premises does not render the tenant liable to pay rent for an unexpired term of a lease in the absence of a contract provision to that effect. The instant lease is silent on that subject. It is plaintiff's theory that absent such a provision a tenant is liable for rent only in the event of his *willful* destruction of the building. No authorities are cited in support of these contentions.

Plaintiff also argues the lease contract required only that the tenant "at the expiration of the said term, yield and deliver up the same, in like condition as when taken, reasonable wear and use thereof and damage by the elements excepted." Plaintiff asserts destruction of a building by fire constitutes "damage by the elements" and it was, therefore, expressly relieved from the duty of delivering up the building. We cannot agree to that interpretation of the phrase "damage by the elements excepted" as employed in a lease contract. In 32 Am. Jur., Landlord and Tenant, § 505, it is said:

"The term 'elements' as used in a provision for the relief of the tenant if the premises are rendered wholly or partially untenantable by 'fire or the elements' has been held to refer only to some sudden, unusual, or unexpected action of the elements, as floods, tornadoes, etc., occurring during the term, and not to the natural and ordinary results of an efficient cause existing at the time of the demise, such as the manner of construction of the building or the nature of the soil upon which it was erected. It seems that if the fire causing the destruction of the building *was due to the tenant's negligence,* he will not be relieved from liability for rent under a general provision in the lease for such relief if the building is destroyed by fire." (Our italics.)

In 51 C. J. S., Landlord and Tenant, § 408, it is stated:

"Independently of express covenant, the law imposes on a tenant the obligation to return the premises at the termination of the tenancy substantially in the same condition as when he received possession, and to restore the property to the landlord at the end of the term *unimpaired by the negligence of the tenant.*" (Our italics.)

See, also, *Tyson v. Weil,* 169 Ala. 558, 53 So. 912; *Powell v. Orphanage,* 148 Va. 331, 138 S. E. 637; *Arkansas Fuel Oil Co. v. Connellee,* (Tex. Civ. App.) 39 S. W. 2d 99; *Womack v. Tripp,* (Tex. Civ. App.) 137 S. W. 2d 180; *Weadock v. Jewett,* 39 N. Y. S. 2d 891.

In the Womack case, *supra,* it was held:

"A tenant is not liable for damages ensuing from reasonable use of premises, but must treat premises so that no substantial injury is done during his occupancy and must restore premises at end of term unimpaired by negligence." (Syl. ¶ 1.)

In the Weadock case, *supra,* the rule is stated thus:

"Where evidence warranted finding that fire was caused by tenant's negligence, tenant could not avoid liability for damage caused by fire or for rent to date of final order of dispossess on basis of lease provision for termination thereof in event of fire." (Syl. ¶ 1.)

It must follow that since a tenant cannot avoid liability for rent during the unexpired term of a lease contract in the event of his prior negligent destruction of the building he cannot, under such circumstances, compel a return of rentals he has paid in advance. The result is the answer constituted a defense and the court did not err in overruling the demurrer thereto.

The second question is whether the court erred in overruling plaintiff's demurrer to defendant's cross petition based on the ground it failed to state a cause of action? In view of what already has been said we need not unduly labor that question. It may, however, be well to observe also that the only damage from which plaintiff is relieved by the lease contract, in addition to damage caused by the elements, is damage resulting from "reasonable wear and use." Manifestly, such exemption from liability does not include negligent destruction of the building. It also should be noted this lease required the tenant to keep the premises and every part thereof in good repair. Reading and construing these provisions together it appears the tenant, except for damage resulting from exempt causes, was required to make repairs of damages otherwise caused. In no event, however, can the lease contract be construed to relieve plaintiff from liability for its own negligence.

All allegations of plaintiff's negligence contained in the answer were made a part of the cross petition by reference. If defendant's building was burned by reason of plaintiff's negligence, which the demurrer admits, then plaintiff is liable to defendant to the extent of the resulting damage. It follows the general demurrer to the cross petition was properly overruled.

The third and last question involved is whether plaintiff's demurrer to the cross petition was properly sustained on the theory defendant's counterclaim to recover damages for the loss of the building constituted an improper joinder with plaintiff's cause of

action for the recovery of the rents alleged in the petition? For this answer we turn to pertinent statutes. The material portion of G. S. 1949, 60-710 provides:

"The answer shall contain:

"*First.* A general or specific denial of each material allegation of the petition controverted by the defendant.

"*Second.* A statement of *any new matter constituting a* defense, *counterclaim* or setoff, or a right to relief *concerning the subject of the action,* in ordinary and concise language, and without repetition." (Our Italics.)

G. S. 1949, 60-711 reads:

"The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action. The right to relief concerning the subject of the action mentioned in the same section must be a right to relief necessarily or properly involved in the action for a complete determination thereof, or settlement of the question involved therein."

There is no need here for a lengthy treatise on the interesting subject of what constituted a proper counterclaim under the common law prior to statutory enactments. In enacting the above statute it was the legislative intent and purpose to permit a defendant to include in his answer counterclaims on any of the three grounds designated in the statute in order to obtain a complete determination or settlement of such controversies in a single action and to thus avoid a multiplicity of suits. (See cases cited under the statute.)

There can be no doubt that the counterclaim complied with the first sentence of the counterclaim statute. A several judgment might have been rendered in an independent action by the defendant based on the allegations of his cross petition. Did the counterclaim fulfill other qualifications of the statute? In other words did it arise out of the contract or the transaction set forth in the petition as the foundation of plaintiff's claim or was it connected with the subject of plaintiff's action? If it falls within the legislative contemplation of any of the three conditions mentioned it was properly asserted.

Plaintiff's action is one for the recovery of a money judgment. Although the amount sought is represented by rent paid in advance by virtue of express terms of a written lease contract pleaded plaintiff does not seek to recover possession of any particular identifiable money. Plaintiff contends the fire was accidental and it was

relieved by the terms of the contract from liability to deliver up the premises in the same condition as when it took possession thereof, except if the damage resulted from willful conduct on its part. This construction of the contract the defendant denies and alleges the fire was due to plaintiff's negligence. Defendant, therefore, seeks to recover damages for the loss of the building occupied by plaintiff under the terms of the contract.

As previously indicated herein plaintiff, except for damage caused by reasonable wear and use and damage by the elements, was required to keep every part of the premises in good repair. Under these circumstances there is some room for the contention the counterclaim arose out of the contract set up by the plaintiff or out of the over-all transaction alleged by it. It is, however, unnecessary here to determine the correctness of defendant's contention in this regard. In order to meet the requirements of the statute the first two grounds thereof may be entirely ignored if the counterclaim meets the requirement of the third qualification, which is that it must be connected with the subject of plaintiff's action.

The first question that intrudes is, therefore, what constitutes the subject of plaintiff's action? In Pomeroy's Code Remedies, 5th ed., § 651, is contained a discussion of various views of courts with respect to this question. The author treats those views, recognizes they are not in complete harmony, and then proceeds to state his views which we regard as sound. He says:

"It seems, therefore, more in accordance with the nature of actions and more in harmony with the language of the statute to regard the 'subject of the action' as denoting the plaintiff's *principal primary right* to enforce or maintain [that for] which the action is brought, than to regard it as denoting the specific thing in regard to which the legal controversy is carried on."

So in the instant case the subject of plaintiff's action was not confined to the narrow limits of the particular *thing*, namely, "rentals" which it sought to recover. The real subject of its action was its *principal primary right* to recover a money judgment represented by rentals previously paid. That alleged right the counterclaim denied and expressly alleged the destruction of the building by fire was the result of plaintiff's negligence. It would, therefore, appear the counterclaim was directly connected with the "subject of the action", namely, plaintiff's *right* of recovery.

That is the interpretation of the counterclaim statute adopted early in this state. (*Deford v. Hutchinson*, 45 Kan. 318, 328, 329, 25 Pac. 641.) It has not been restricted or modified in our later

cases. (*General Refrigeration Sales Co. v. Roberts,* 145 Kan. 333, 337, 65 P. 2d 269.)

Under G. S. 1949, 60-102 the provisions of the code of civil procedure and all proceedings thereunder must be liberally construed with a view to promote their object and assist the parties in obtaining justice. This command, of course, includes proceedings under the counterclaim statute, (*United States Hoffman Machinery Corp. v. Ebenstein,* 150 Kan. 790, 96 P. 2d 661; affirmed on rehearing, 152 Kan. 198, 103 P. 2d 788.)

Plaintiff, in substance, contends the connection between the counterclaim and the subject of plaintiff's action must be of a character that the parties could be supposed to have foreseen and contemplated in their dealings. There is authority for that contention. (Pomeroy's Code Remedies, 5th ed., § 652.) The doctrine also has been considered and approved in some ably written opinions. Would its application defeat the instant counterclaim?

Plaintiff contends destruction by fire was not contemplated for the reason the lease contract contained no provision for the carrying of insurance by either party. It is true it did not but is that a conclusive reason for deciding no damage to or impairment of the building by plaintiff's negligence was within the contemplation of the parties? We cannot think so. As previously indicated, the lease contract relieved plaintiff only from liability for damages resulting from ordinary wear and use and damages by the elements, none of which exemptions from liability are here involved. Furthermore, the lease contract, as also previously indicated, expressly required the plaintiff-tenant to "keep the said premises in good repair and every part thereof." Surely it must have been contemplated by such a provision that, except for damages caused by the limited exemptions, plaintiff should be liable for other damages caused by it and that it would be required to repair the same.

If plaintiff, for example, by its negligent operation of a stove caused some woodwork or other portion of the building to be burned could it reasonably be argued such damage was not within the contemplation of the parties and that plaintiff would be under no contractual obligation to repair the damage so caused? We think not. Upon what theory then can it logically be argued plaintiff is not liable for the negligent destruction of the entire building? We are aware of none. Moreover in this view of the problem it also may be said the counterclaim arose out of the over-all transac-

tion alleged in plaintiff's petition, if in fact not out of the lease contract itself.

There is another interesting aspect of the propriety, if not of the necessity, for filing the counterclaim not mentioned by the parties. If defendant failed in this action to assert the counterclaim would such failure constitute *res judicata* under our decisions in the event she later filed an independent action for the same relief? Obviously that question is not directly before us now and we shall not pursue it. It is sufficient now to say it was proper to assert it in this action.

It is true that under the old common law doctrine and under some of the early decisions of courts construing the same or similar counterclaim statutes it was held a counterclaim grounded in tort could not be joined with an action filed by a plaintiff based on contract. This narrow interpretation of the statute has long since been abandoned by most courts (anno. 68 A. L. R. 451) and it does not obtain in this state, if the tort is connected with the subject of plaintiff's action. (*Miller v. Thayer*, 96 Kan. 278, 282, 150 Pac. 537; *United States Hoffman Machinery Corp. v. Ebenstein*, 150 Kan. 790, 96 P. 2d 661; affirmed on rehearing, 152 Kan. 198, 103 P. 2d 788; *Rush v. First Nat. Bank*, 71 Fed. 102, 105.) We think the instant counterclaim clearly fulfills that requirement, if it does not in reality also qualify under each of the other two provisions of the statute. It follows the order sustaining the demurrer to the counterclaim on the ground of improper joinder of causes of action cannot be sustained.

The rulings on plaintiff's demurrer are, therefore, affirmed in part and reversed in part in accordance with the views herein expressed.